#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KOLTON AUSTYN GENE McANALLY, ) <br> ) <br> Defendant. ) | Case No. 24-cr-00324-JFH |

### OPINION AND ORDER

Before the Court is the Government's motion to determine whether this case is eligible for a detention hearing. The Court finds the case is neither categorically eligible for initial detention, nor is it categorically barred from such eligibility. Instead, eligibility turns on whether the underlying offense, in fact, involved Defendant's use of a dangerous weapon. As the Court has not allowed the parties to provide facts relevant to this determination, the undersigned will set a hearing to determine detention eligibility and, if appropriate, to determine whether there are conditions of release that will reasonably assure Defendant's appearance and the safety of others.

### INTRODUCTION

Defendant Kolton Austyn Gene McAnally is charged with the involuntary manslaughter of Madison Beisley Barnes under 18 U.S.C. § 1112(a) and an assault resulting in serious bodily injury to F.G. under 18 U.S.C. § 113(a)(6). (ECF No. 22.)

### Factual Background

At McAnally's initial appearance, the parties and the Court discussed the issue of detention eligibility in categorical terms. As a result, no proffer of facts regarding the offense charged was made or requested. In its brief, the Government states that this case arises from a house party in February 2024, where 19-year-old McAnally consumed

alcohol and cannabis to the point of intoxication. (ECF No. 14 at 1.) McAnally allegedly drove away from the party—while intoxicated—with two passengers, 20-year-old F.G. and 18-year-old Barnes. (*Id.*) Before the car reached the road, however, F.G. and Barnes left the vehicle and began walking back to the house. (*Id.*) McAnally then allegedly backed over Barnes and F.G., pinning and killing Barnes and injuring F.G. (*Id.* at 1–2.)

## Procedural Background

The Government initially charged McAnally on October 8, 2024. (ECF No. 2.) According to the original indictment, on February 4, 2024, McAnally killed Barnes "while in the commission of an unlawful act not amounting to a felony, that is, operating a motor vehicle recklessly and after consuming alcohol . . . ." (*Id.* at 1.)

McAnally was arrested on December 18, 2024, and first appeared before the undersigned that day without counsel. (ECF Nos. 7, 10.) The Government moved to detain (ECF No. 5), arguing this case qualifies for a detention hearing because it involves "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm or destructive device (as those terms are defined in [18 U.S.C. § 921]), or any other dangerous weapon . . . ." 18 U.S.C. § 3142(f)(1)(E). At the initial hearing, the Government was unable to provide any legal authorities for its assertion that this case qualified for a detention hearing.[1] The Court found no basis to hold McAnally but left the

---

[1] The Government's counsel cited two prior cases where he understood a defendant had been detained pretrial when charged with involuntary manslaughter—*United States v. Kuykendall*, No. 21-cr-00084-GKF, and *United States v. Hemphill*, No. 21-cr-153-GKF (N.D. Okla.). However, his understanding was incorrect. In *Kuykendall*, the defendant was initially detained while charged with second degree murder for a stabbing death (although he later pled guilty to voluntary manslaughter). (*See* No. 21-cr-84-GKF, ECF Nos. 2 & 22.) By contrast, in *Hemphill*, the defendant was charged with involuntary manslaughter for driving a vehicle recklessly while impaired. (*See* No. 21-cr-153-GKF, ECF No. 2.) There, however, the government argued the case involved a crime of violence

issue open for the parties to argue after the Government provided its legal authorities and McAnally had appointed counsel. At the continued initial appearance on December 19, 2024, the Court appointed McAnally's counsel and set a briefing schedule. (ECF No. 11.)

On January 6, 2025, a superseding indictment was filed. (ECF No. 22.) Defendant remains charged with the involuntary manslaughter of Barnes and is now also charged with assault resulting in serious bodily injury to F.G. (*Id.*) This additional charge does not alter the Court's analysis of detention eligibility.

## ANALYSIS

### I.   Detention Eligibility under the Bail Reform Act

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). One such "carefully limited exception" is pretrial detention under the provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq. Id.*

Under the Act, initial pretrial detention is not a possibility for all defendants. Instead, the Act provides two tranches of cases in which a detention hearing may be held— (1) cases involving certain types of offenses, such as crimes of violence or certain offenses involving controlled substances, § 3142(f)(1); and (2) cases involving specific risks relating to a defendant, such as a serious risk a defendant will flee or a serious risk he will obstruct justice or threaten a witness, § 3142(f)(2). *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (per curiam). The Act does not, however, allow for a

---

(*id.* ECF No. 7); defense counsel argued involuntary manslaughter did not qualify as a crime of violence (*id.* ECF No. 18); and the magistrate judge denied the motion for detention (*id.* ECF No. 19).

detention hearing simply because a defendant is a danger to others.[2] *See, e.g., United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (per curiam) (collecting cases); *see also United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) (per curiam) ("a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention").

The Government argues this case falls into the first tranche—cases involving certain types of offenses—specifically § 3142(f)(1)(E), which applies to cases involving possession or use of a firearm, destructive device, or any other dangerous weapon. This subsection is one of the newer additions to the statute. Congress added it as part of the Adam Walsh Child Protection and Safety Act of 2006 (the "Adam Walsh Act"), Pub. L. No. 109-248, 120 Stat. 587, which was enacted to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." *Id.* Section 3142 was amended in the section addressing "Improvements to the Bail Reform Act to address sex crimes and other matters." *Id.* § 216.

## II.   Categorical vs. Factual Review

Before digging into the parties' arguments, the Court must first address whether § 3142(f)(1)(E) should be viewed in a categorical fashion, relating only to certain enumerated crimes. If so, then this case would never be eligible for detention, because

---

[2] It is only after a detention hearing that the Court may issue an order detaining a defendant pending trial. *See* 18 U.S.C. § 3142(e)(1). "If, after a hearing pursuant to [§ 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." *Id.*; *see also Ailon-Ailon*, 875 F.3d at 1336–37 (outlining the "two-step process for detaining an individual before trial").

4

involuntary manslaughter (or assault resulting in serious bodily injury) can easily occur without the use of a firearm or dangerous weapon. Alternatively, if the statute allows the Court to look at the factual circumstances underlying the offense charged, it is possible this case could be eligible for detention.

Looking to the plain language and structure of the statute, the Court finds that subsections (A) through (C) are categorical—involving a simple comparison between the offense charged and the list of qualifying crimes. By contrast, subsections (D) and (E) apply to any case where a "felony" is charged, so long as certain additional facts are shown. For example, subsection (A) provides for a detention hearing "in a case that involves . . . a crime of violence, a violation of section 1591, or" certain other offenses. *See* 18 U.S.C. § 3142(f)(1)(A). "Crime of violence" meanwhile is further defined an offense with certain elements or that is a felony found in certain chapters of Title 18. *See id.* § 3156(a)(4). Subsections (B) and (C) similarly apply only to "a case that involves . . . an offense" that meets certain criteria. *See id.* § 3142(f)(1)(B)–(C).

By contrast, subsection (D) applies to "a case that involves . . . any felony" but only if the person charged has certain prior convictions. *See id.* § 3142(f)(1)(D). Similarly, subsection (E) applies "in a case that involves . . . any felony that is not otherwise a crime of violence" but only if additional criteria are met—(i) that felony "involves a minor victim," (ii) that felony "involves the possession or use of a firearm or destructive device . . ., or any other dangerous weapon," or (iii) that felony "involves a failure to register under [18 U.S.C. § 2250]." *Id.* § 3142(f)(1)(E). These subsections, therefore, contain a categorical determination—whether the case is "a felony" or "a felony that is not otherwise a crime of violence." But, beyond that, they require a factual determination, including

5

whether the felony falls into a smaller subset of cases involving certain types of victims or weapons.[3]

Moreover, to the extent § 3142(f)(1)(E) is ambiguous, the Court is persuaded by the reasoning of the Second Circuit in *United States v. Watkins*, 940 F.3d 152, 165–67 (2d Cir. 2019). In *Watkins*, the Second Circuit looked for guidance in the Adam Walsh Act's amendment to another part of § 3142 that used similar language—the requirement for electronic monitoring in "[i]n any case that involves a minor victim" under certain enumerated statutes, 18 U.S.C. § 3142(c)(1)(B).[4] *Watkins*. 940 F.3d at 166–167. As the Second Circuit noted, the enumerated statutes include offenses that categorically involve minor victims—e.g., § 2251 (sexual exploitation of children)—and offense that do not—e.g., § 1201 (kidnapping). *Id.* In these circumstances, it is reasonable to read the language "involves a minor victim" and, by extension, the language "involves the possession or use of a . . . dangerous weapon" as looking to the underlying facts of the crime charged and not the elements of the offense.

### III.  Is This Case a Felony Involving Use of a Dangerous Weapon?

The Court now turns to the alleged facts underlying the current offense. The Court finds that, in certain circumstances, an offense involving involuntary manslaughter or assault <u>could</u> involve use of a dangerous weapon. The Court, however, has not given the

---

[3] The provision regarding failure to register under § 2250 fits less easily into this analysis. However, § 2250 contains offenses covering both failure to register <u>and</u> failure to provide certain information regarding intended foreign travel. *Compare* 18 U.S.C. § 2250(a) *with* § 2250(b). Certainly, the detention statute could have addressed this distinction categorically, simply by referring to "a case involving . . . an offense under 18 U.S.C. § 2250(a)." But, Congress chose another route that appears to ask the Court to look behind the specific statute charged and to the alleged crime's underlying characteristics.

[4] The undersigned does not comment on the Second Circuit's other findings in *Watkins*.

6

parties an opportunity to present or proffer evidence on whether the alleged offense in this case involved such use. To avoid further delay, the Court will set this matter for a hearing on eligibility. The Court, however, does not find use of a dangerous weapon to be defined as broadly as the Government asserts and offers clarity on that issue.

### A.   Standard of Review

The Government bears the burden of showing a case is eligible for detention by a preponderance of the evidence. *Cf. United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (per curiam) (noting the district court "must first determine by a preponderance of the evidence" whether the defendant has been charged with an enumerated crime or meets the other requirements of § 3142(f)); *see also United States v. Syed*, 634 F. Supp. 3d 1036, 1041 (D.N.M. 2022) (agreeing the Government must establish entitlement to a detention hearing by a preponderance of the evidence). Here, as previously noted, the Government argues eligibility based on the use of a dangerous weapon.

### B.   Use of a Dangerous Weapon

None of the parties cite any cases defining "dangerous weapon" as used in the Bail Reform Act or what "use" of a dangerous weapon means in this context, and the Court has found little on this issue. *See, e.g., United States v. Chansley*, 525 F. Supp. 3d 151, 161 (D.D.C. 2021) ("The Bail Reform Act does not define the term 'dangerous weapon,' nor is the Court aware of any case in this Circuit or any other that defines 'dangerous weapon' as used in the Bail Reform Act.").[5]

---

[5] In *Chansley*, the district court found that a "dangerous weapon" includes "an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm." *Id*. at 161–62. The court then determined that "a six-foot pole with a metal spearhead fixed to the top" is an inherently dangerous weapon. *Id*. at 162. The court, therefore, did not have to decide in what circumstances objects with peaceful

The Government argues that using a car "in such a way that it presents a high risk of inflicting injury" qualifies as "use of a . . . dangerous weapon," relying primarily on the sentencing guideline for aggravated assault and related cases. (ECF No. 14 at 2–4.) That guideline includes an increase in the offense level when "a dangerous weapon (including a firearm) was otherwise used . . . ." U.S.S.G. § 2A2.2(b)(2). The problem with the Government's reliance on this sentencing guideline is that it explicitly deals with the use of ordinary objects as dangerous weapons—and cabins that use. The Application Note states that the term dangerous weapon "includes any instrument that is not ordinarily used as a weapon (*e.g.*, a car, a chair, or an ice pick) <u>if such instrument is involved in the offense with the intent to commit bodily injury</u>." *Id.* § 2A2.2, Application Note 1 (emphasis added).

The cases cited by the Government show that, when applying § 2A2.2, the Tenth Circuit recognizes this limitation. In *United States v. Quiver*, the Tenth Circuit noted—as the Government states—that this Circuit "fully agree[s] with" certain cases that find "an object not ordinarily used as a dangerous weapon can be come a dangerous weapon depending on the manner of its use." 805 F.3d 1269, 1273 (10th Cir. 2015) (citing Application Note 1 and its limitation). However, in *Quiver*, the object used—a Taser—was inherently a weapon and "(unlike the objects not ordinarily used as weapons referenced in [the] cited cases) need not depend on a manner of use to achieve the designation of a 'dangerous weapon' under § 2A2.2(b)(2)(B)." *Id.* Similarly, in *United States v. Hatch*, the Tenth Circuit found a tennis shoe used in an intentional assault to be a dangerous weapon, after quoting the Application Note's provision that a dangerous weapon includes

---

purposes might be turned into dangerous weapons by using them in a manner likely to cause bodily harm. *Id.*

ordinary items when they are "involved in the offense with the intent to commit bodily injury." 490 F. App'x 136, 138 (10th Cir. 2012) (unpublished).[6]

To avoid the implication of these more recent cases, the Government cites to dicta from a Tenth Circuit case that did not apply § 2A2.2 but, instead, looked to it by analogy when a district court departed upward at sentencing "for the 'extreme' recklessness" of a defendant's conduct in committing involuntary manslaughter. *United States v. Jones*, 332 F.3d 1294, 1305–07 & nn. 18–19 (10th Cir. 2003).[7] In arguing against an analogy to the "use" of a dangerous weapon, the defendant claimed he did not intend to use his truck as a weapon. *Id.* at 1306 n.18. The district court, however, had found the defendant's conduct "was excessively reckless and so disrespectful of human life that it approached a deliberate or intentional act," and the Tenth Circuit agreed.[8] *Id.* (alterations omitted). The Tenth Circuit then went on to consider the definition of "otherwise used" and found that nothing in the guidelines definition of this term or in the guidelines for robbery (§ 2B3.1) or aggravated assault (§ 2A2.2) required "the defendant have the *specific intent* to use the dangerous weapon; rather, the Guidelines simply suggest that the

---

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[7] When *Jones* was decided, the sentencing guidelines for involuntary manslaughter had only two offense levels—one for criminally negligent conduct and another for reckless conduct. U.S.S.G. § 2A1.4 (2003). The current guidelines have added a third, higher base offense level for when involuntary manslaughter involves "the reckless operation of a means of transportation." U.S.S.G. § 2A1.4(a)(2)(B) (2024). Even so, the guidelines for involuntary manslaughter do not reference dangerous weapons, nor was this change intended to equate vehicles to dangerous weapons. Instead, the change was made "to address disparities between federal and state sentences for vehicular manslaughter" and to account for an increase in the statutory maximum sentence. *See* U.S.S.G. Amend. 663, available at https://www.ussc.gov/guidelines/amendment/663 (last visited Jan. 8, 2025).

[8] The district court relied on the defendant's "*five* previous drunk-driving convictions" as "evidence of the *deliberateness* of his conduct." *Jones*, 332 F.3d at 1304.

instrumentality must be used in such a way that it presents a high risk of inflicting injury." *Id.* Given the *Jones*' focus on analogy, its agreement with the district court's finding that the defendant's conduct approached an intentional act, and later Tenth Circuit cases applying Application Note 1, the Court does not read *Jones* as invalidating Application Note 1 or containing a holding as to the definition of use of a dangerous weapon.[9] *See also United States v. Martinez*, No. CR 04-2248 MV, 2006 WL 8444532, at *3 n.1 (D.N.M. Feb. 24, 2006) (referring to *Jones*' discussion as dicta and requiring intent to commit bodily injury before finding a car to be a dangerous weapon under U.S.S.G. § 2A2.2).

*Quiver* and other Tenth Circuit cases have, however, cited with approval the dangerous-weapon analysis of the Ninth Circuit in *United States v. Dayea*, 32 F.3d 1377 (9th Cir. 1994). *See, e.g., Quiver*, 805 F.3d at 1273 (noting the defendant's citation to *Dayea* and fully agreeing that an ordinary object can become a dangerous weapon depending on the manner of its use). Most often, the Tenth Circuit quotes *Dayea* for the proposition that "courts have found that, in proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs." *United States v. Tissnolthtos*, 115 F.3d 759, 763 (10th Cir. 1997) (quoting *Dayea*, 32 F.3d at 1379); *see also United States v. Pluma*, 511 F. App'x 705, 709 (10th Cir. 2013) (unpublished) (quoting this sentence from *Tissnolthtos*); *United States v. Serrata*, 425 F.3d 886, 910 (10th Cir. 2005) (same); *United States v. Farrow*, 277 F.3d 1260, 1265 (10th Cir. 2002) (same).

---

[9] *United States v. Rodriguez-Chavez* similarly involved an upward departure, this time in an illegal reentry case. There, the court analyzed use of a dangerous instrumentality under U.S.S.G. § 5K2.6, where the defendant had 10 prior drunk driving convictions in one state alone. 153 F. App'x 524, 528 (10th Cir. 2005) (unpublished).

*Dayea* goes on to provide a helpful guide to determining when a "dangerous weapon" is "used" during an offense, particularly "when the 'weapon' is not as unambiguous as a handgun, but is one of the many instruments that are normally put to benign uses but are nevertheless capable of causing serious injury—instruments such as walking sticks or [a defendant's] pickup truck." 32 F.3d at 1380. Again in the context of U.S.S.G. § 2A2.2, the *Dayea* court explains, "[w]hat makes use of a dangerous weapon (such as a vehicle) culpable conduct, warranting increased punishment, is use of such an object *in its capacity as a weapon*—that is, using it for the *purpose* of injuring or threatening to injure." *Id.* In the case before it, where a motor vehicle was used recklessly in committing an assault, it was not used as a dangerous weapon. *Id.* at 1381.

The Court finds *Dayea*'s reasoning persuasive and supported by the language of the Bail Reform Act. When discussing pretrial detention, the term "dangerous weapon" does not appear in a vacuum. Instead, the statute authorizes a detention hearing in "a case that involves . . . any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm or destructive device (as those terms are defined in [18 U.S.C. § 921]), or any other dangerous weapon." 18 U.S.C. § 3142(f)(1)(E). As the Supreme Court has recently emphasized, "a general phrase can be given a more focused meaning by the terms linked to it." *Fischer v. United States*, 603 U.S. 480, 488 (2024). It goes too far to read "use of . . . a dangerous weapon" as incorporating the involvement of <u>any</u> everyday object—whether it be a tennis shoe or a car—just because it was involved in a reckless act that resulted in injury. Such a reading would so untether "any other dangerous weapon" from firearms and destructive devices as to render the limitation virtually meaningless.

11

The Court, therefore, finds that where, as here, the object involved is not inherently a dangerous weapon, "use . . . of a dangerous weapon" requires that the object be used in its capacity as a weapon for the purpose of injuring or threatening to injure. With this definition in mind, the Court finds that cases involving the felonies of involuntary manslaughter or assault resulting in serious bodily injury can—in certain circumstances—become eligible for a detention hearing under 18 U.S.C. § 3142(f)(1)(E). For example, a defendant can commit involuntary manslaughter in circumstances where he acts in self-defense but was criminally negligent in doing so. *United States v. Brown*, 287 F.3d 965, 975 (10th Cir. 2002). Such cases can easily involve the use of a dangerous weapon in its capacity as a weapon and for the purpose of injuring another. *See, e.g., United States v. Yazzie*, 188 F.3d 1178, 1186 (10th Cir. 1999) (requiring involuntary manslaughter instruction where defendant stabbed victim with knife).

**C.   This Case**

The Court, therefore, turns to whether this case involves use of a dangerous weapon. It does not currently appear that McAnally's alleged actions would qualify as use of a vehicle as a dangerous weapon, but the parties have not been given an opportunity to present facts to make (or refute) this argument. The Court will therefore set this matter for hearing. Given the amount of time that has passed, the parties should also be prepared at the hearing to present any evidence relevant to whether—if this case is eligible for detention—there are conditions of release that will reasonably assure Defendant's appearance and the safety of any other person or the community. This will allow the Court, if appropriate, to promptly decide all outstanding issues relating to detention.

IT IS THEREFORE ORDERED that the motion to reconsider detention eligibility in the *Bench Brief* (ECF No. 14) is GRANTED.  A separate order will be entered setting this matter for a hearing on detention eligibility and, if appropriate, detention.

ORDERED this 8th day of January, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT